

| | **THE CITY OF NEW YORK** | |
|---|---|---|
| **Hon. Sylvia O. Hinds-Radix**<br>*Corporation Counsel* | **LAW DEPARTMENT**<br>100 CHURCH STREET<br>NEW YORK, NY 10007 | **Nicholas R. Ciappetta, Senior Counsel**<br>Administrative Law and Regulatory Litigation<br>Division<br>(212) 356-4036<br>nciappet@law.nyc.gov |

September 15, 2023

**BY ECF**
Honorable Nina R. Morrison
United States District Court
Eastern District of New York
Brooklyn, New York 11201

                    Re:   Joseph Garofalo v. New York City, *et al.*, 22 CV 7620 (NM)(VMS)

Dear Judge Morrison:

        I am an attorney in the Office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, and counsel for the defendants – the City of New York and New York City Police Department Commissioner Edward A. Caban[1] – in the above-referenced action. I write to request that the Court stay this case in light of the United States Supreme Court's decision to grant certiorari in United States of America v. Rahimi, Zackey, No. 22-915.[2] Plaintiff does not consent to a stay.

        The Supreme Court's decision in New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022), established a constitutional right to carry a firearm in public for purposes of self-defense, see Bruen, 142 S. Ct. at 2156, and, equally significantly, rejected the two-part means-end scrutiny applied by many of the federal circuits to Second Amendment challenges in favor of a "test rooted in the Second Amendment's text, as informed by history." Id. at 2127. The application of this new test has been challenging for attorneys and judges,

---

[1] Plaintiffs originally named then-NYPD Commissioner Keechant Sewell as a defendant in her official capacity as Commissioner of the New York City Police Department. Sewell resigned effective June 30, 2023. Edward A. Caban was appointed Commissioner of the New York City Police Department on July 17, 2023, by New York City Mayor Eric Adams. Pursuant to Federal Rule of Civil Procedure 25(d), the successor of a public officer is automatically substituted as a party when the originally named public officer "ceases to hold office while the action is pending."

[2] Oral argument on this matter is set for November 7, 2023.

leading to inconsistent decisions and a wave of new litigation seeking to invalidate longstanding laws. For example, earlier this year, the United States Court of Appeals for the Fifth Circuit held that 18 U.S.C. § 922(g)(8), which prohibits the possession of firearms by persons subject to domestic-violence restraining orders, violates the Second Amendment on its face. See United States v. Rahimi, 61 F.4th 443 (5th Cir. 2023), cert. granted, 143 S. Ct. 2688 (June 30, 2023). The Fifth Circuit invalidated 18 U.S.C. § 922(g)(8) because the historical analogies offered by the Federal Government – laws disarming people considered to be dangerous – were not "relevantly similar" to 18 U.S.C. § 922(g)(8). See id. at 461.

In this case, the Petition/Complaint makes a facial challenge to certain rules promulgated by the New York City Police Department ("NYPD") and certain laws enacted by the New York City Council that are cited in the NYPD License Division's August 2, 2022 letters denying Plaintiff's applications for a Premise Residence license and Rifle/Shotgun Permit. See Petition/Complaint at ¶¶ 55, 66, 77-78, 82, and "Wherefore Clause." Specifically, Plaintiff's applications were denied pursuant to: 38 RCNY § 3-03(a) and 38 RCNY § 5-10(a)[3] based on the circumstances concerning five (5) arrests[4]; 38 RCNY § 3-03(e) and 38 RCNY § 5-10(e) for failure to disclose full arrest history; and 38 RCNY § 3-03(g) and 38 RCNY § 5-10(g) based on his domestic violence incident history (and failure to disclose that history). See Exhibits 1 and 2 to Petition/Complaint. In conclusion, the NYPD License Division stated that the arrests and domestic violence incidents "raise doubt about [Plaintiff's] ability to safely own, possess, and use a firearm and were not disclosed." Id.

While the Bruen decision reshaped Second Amendment jurisprudence, the Supreme Court did not disturb the requirement to obtain a license in order to possess firearms, and endorsed the licensing regimes of 43 states. See Bruen, 142 S. Ct at 2123 n.1, 2138 n.9. Nor did Bruen decide "who may lawfully possess a firearm…." Bruen, 142 S. Ct at 2157 (Alito, J., concurring). The Supreme Court did, however, emphasize that the rights to possess a firearm in the home and carry in public belonged only to responsible, law-abiding citizens. In fact, between the majority and concurring opinions in Bruen, the Court repeated the term "law-abiding" eighteen (18) times.

Bruen did not define "law-abiding" or describe the circumstances that would render an individual non-law-abiding. Nor did the Court explain how to harmonize the concept of a "law-abiding" citizen with the Bruen test. These questions, as well as whether the Second Amendment permits the disarming of individuals based on domestic violence incidents/protective orders, are likely to be addressed by the Supreme Court in Rahimi. As such, the impending decision by the Supreme Court in Rahimi is likely to be instructive of several of the issues raised by this litigation.[5]

---

[3] The NYPD's rules relating to Rifle/Shotgun Permits are codified in Title 38, Chapter 3 of the Rules of the City of New York. Handgun licenses are regulated by Chapter 5 of Title 38 of the Rules of the City of New York.

[4] Two of these arrests were based on violating an Order of Protection by contacting his ex-wife and one of the arrests was for disobeying a Court Order by calling his son.

[5] Plaintiff's failure to disclose his arrest/domestic incident history, however, is a standalone basis to deny his Article 78 challenge to the rationality of the License Division's denial of his applications for a Premise Residence license and Rifle/Shotgun Permit.

The Supreme Court has stated that, "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254 (1936). In deciding whether to grant a stay, five factors are generally considered by courts in the Second Circuit: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quoting Volmar Distributors v. New York Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993)).[6] Balancing these factors, a stay of this case is warranted until a decision is issued by the Supreme Court in Rahimi.

With respect to the first factor, there is no prejudice to Plaintiff from a stay. While fact discovery has closed in this case, expert discovery has not, and the parties have until October 30, 2023, to *commence* any dispositive motion practice. In contrast, Rahimi is fully briefed, an oral argument date is set, and a decision will likely be issued before the Supreme Court concludes its term at the end of June 2024. Thus, the Rahimi case is on a faster track to a dispositive decision than the instant matter and a stay herein would be neither "indefinite nor immoderate." Estate of Heiser v. Deutsche Bank Trust Co. Ams., No. 11-1608, 2012 U.S. Dist. LEXIS 150265, at *13 (S.D.N.Y. Oct. 12, 2012). Additionally, a decision in Rahimi may assist Plaintiff as it will provide this Court "with guidance as to the quality, nature, and validity of [his] claims." In re MPM Silicones, L.L.C., No. 15-2280, 2017 U.S. Dist. LEXIS 162681, at *7 (S.D.N.Y. Oct. 2, 2017).

The expectation that Rahimi will provide guidance on at least some of the issues in this case also weighs in favor of the second factor. Awaiting a decision by the Supreme Court will obviate potentially duplicative motion practice and/or the need for supplemental briefing once Rahimi is decided. The City of New York undoubtedly has an important interest in defending its firearm regulations and such defense would clearly benefit from the Supreme Court's most recent Second Amendment decision. Moreover, the issues presented herein are not unique to this case. There are challenges to many of the same NYPD rules in other cases pending in the district courts of the Second Circuit. See Taveras v. New York City, No. 20-1200 (AS), Third Amended Complaint (Docket Entry No. 58) ¶¶ 28, 32, 46, 60-61, and 64-66[7]; Srour v. New York City, 22-00003 (JPC), Complaint (Docket Entry No. 1) ¶¶ 157, 165-166, Prayer for Relief (both of which were commenced by Plaintiff's counsel).

The remaining factors may be considered together because a court's interest in the conservation of judicial resources also promotes the interests of non-parties and the general public. See Gonzalez de Fuente v. Preferred Home Care of N.Y. LLC, No. 18-6749, 2020 U.S.

---

[6] The Kappel factors are also applied by the Eastern District of New York. See United States v. Town of Oyster Bay, 66 F.Supp. 3d 285, 289 (E.D.N.Y. 2014).

[7] The City also filed a motion for a stay based on Rahimi in Taveras. See Docket Entry No. 69.

Dist. LEXIS 25592, at *7-8 (E.D.N.Y. Feb. 13, 2020); see also United States v. Shapiro, No. 21-2475, 2021 U.S. Dist. LEXIS 220176, at *5 (E.D.N.Y. Nov. 15, 2021); Loftus v. Signpost Inc., 464 F. Supp. 3d 524, 527 (S.D.N.Y. 2020). One situation in which courts have exercised their staying power is "when a higher court is close to settling an important issue of law bearing on the action." Sikhs for Justice v. Nath, 893 F. Supp. 2d 598, 622 (S.D.N.Y. 2012); see also Lasala v. Needham & Co., 399 F. Supp. 2d 421, 427 n.39 (S.D.N.Y. 2005). A stay under these circumstances may be proper even where the decision by the higher court is "not necessarily controlling of the action before the court." In re Literary Works in Elec. Databases Copyright Litig., No. M-21-90, 2001 U.S. Dist. LEXIS 2047, at 85-86 (S.D.N.Y. Mar. 1, 2001); see also Loftus, 464 F. Supp. 3d at 527 (granting a stay even where the anticipated decision from the United States Supreme Court is not dispositive because such a decision "could contain guidance that would allow … litigation to proceed on a reasonable and efficient basis"). Moreover, when the higher court is the United States Supreme Court, district courts in the Second Circuit customarily postpone final disposition pending a decision by the Supreme Court. See Sikhs, 893 F. Supp. 2d at 622; Jugmohan v. Zolan, No. 98-1509, 2000 U.S. Dist. LEXIS 1910, at *13 (S.D.N.Y. Feb. 25, 2000); Loftus, 464 F. Supp. 3d at 527; In re Literary Works in Elec. Databases Copyright Litig., 2001 U.S. Dist. LEXIS 2047, at *7-9 (stating that "[p]roceeding with this litigation several months before the Supreme Court more precisely defines the claims at issue would be unnecessarily wasteful of both the Court's and the litigants' resources"); Consumer Fin. Prot. Bureau v. Credit Acceptance Corp., No. 23-00038, 2023 U.S. Dist. LEXIS 137992 (S.D.N.Y. Aug. 7, 2023); Gonzalez de Fuente, 2020 U.S. Dist. LEXIS 25592, at *10 (reasoning that it "would be an inefficient use of the Court's time and resources" to decide "an issue of law that the Supreme Court will answer definitively in a few months' time").

The rationale for a stay herein is even more compelling in light of the fact that the Supreme Court has interpreted the Second Amendment on a sparing basis. It was nearly seven decades between United States v. Miller, 307 U.S. 174 (1939), and the Court's next Second Amendment decision in District of Columbia v. Heller, 554 U.S. 570 (2008). Likewise, before Bruen, the Supreme Court's most recent Second Amendment decision was issued twelve years ago in McDonald v. City of Chicago, 561 U.S. 742 (2010). Granting certiorari to hear another Second Amendment case a little over one year after Bruen was decided is telling and, based on recent history, one can expect that it will result in further direction to the lower federal courts.

Plaintiff's challenge to the constitutionality of many of the NYPD rules and City laws at issue in this case implicate the "law-abiding citizen" phrase frequently invoked by the Supreme Court in Bruen, the power of the government to prohibit dangerous, untrustworthy, or unvirtuous persons from possessing arms, and whether there are "relevantly similar" historical analogues for modern laws disarming those accused of domestic violence. It appears likely that Rahimi will address some, if not all, of these topics. This Court and the litigants to this case would greatly benefit from such guidance.

For all these reasons, a stay of this litigation is warranted until the Supreme Court issues a decision in Rahimi.

Respectfully submitted,

/s/
Nicholas Ciappetta