

September 18, 2023

**VIA ECF**

Honorable Nina R. Morrison
United States District Court
Eastern District of New York
Brooklyn, New York 11201

      Re:    *Joseph Garofalo v. New York City, et ano.*
             22 Civ. 7620 (NM)(VMS)

Dear Judge Morison,

    I represent the plaintiff, Joseph Garofalo, in the above-referenced matter. I write in opposition to the defendants' request for a stay.

    Defendants' request is based solely on the belief that the Supreme Court's determination in *United States of America v. Rahimi* (No. 22-915) is necessary for a determination of whether the City's denial of Plaintiff's application for a license to possess rifles and shotguns violated his Second Amendment rights. It is not.

    The ***sole*** consideration for this Court is the application of the test for Second Amendment challenges, as reiterated by the Supreme Court in *NYSRPA v. Bruen*, 142. S.Ct. 2111 (2022): (i) does the plain text of the Second Amendment cover Plaintiff's conduct ('keeping' arms) – if so, the Second Amendment 'presumptively protects that conduct'; (ii) to justify its regulation, the City must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. *Bruen*, at 2126, 2129-30.

    The query for this Court is straightforward: has the City produced proof of a National tradition of enforcing regulations that are "distinctly similar"[1] to New York City's regulation of rifles and shotguns[2], and handguns[3] in "how" and "why" they curtailed Plaintiff's right to possess long guns and handguns. *Bruen*, at 2132–33.

---

[1] *Bruen,* at 2131.
[2] Specifically, 38 RCNY 3-03(a), (e), (g), and NYC Administrative Code 10-303(a)(2) and (9).
[3] Specifically, 38 RCNY 5-10(a), (e), (g); and NYC Administrative Code 10-303(a)(2) and (9).

2 Overhill Road, Suite 400        *info@bellantoni-law.com*        (914) 367-0090 (t)
Scarsdale, New York 10583        www.bellantoni-law.com        (888) 763-9761 (f)

If the City fails to produce proof of a National historical tradition, the Court must find that the regulations violate the Second Amendment. *Bruen*, at 2126, 2129-30 (only where the government proves that the regulation is consistent with the Nation's historical tradition of firearm regulation may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command').

Because there was no National tradition of the government's regulation of rifles and shotguns and/or handguns when the Bill of Rights was passed[4], staying progress in this case while waiting for a decision in the *Rahimi* case, which has not yet held to oral argument and will likely not yield a written for several months thereafter, is an unnecessary delay of the proceedings.

And while the term "law abiding" is referenced by the Supreme Court, the *Bruen* test does not include a "law abiding" component. To the contrary, Supreme Court jurisprudence forecloses any ability of the government to subjectively determine – as the License Division does (and did here) – whether they feel someone is "law abiding."[5,6]

*Rahimi* is also factually inapposite. Mr. Rahimi was convicted under 18 U.S.C. 922(g)(8) for possessing firearms while he was actively subject to an order of protection. The issue in *Rahimi* is whether making it a crime to possess firearms while being subject to an order of protection fits within our Nation's historical tradition of firearm regulation. This query would be relevant if this case involved a challenge to 38 RCNY 3-03(f) and/or 38 RCNY 5-10(f) ("The applicant is the subject of an order of protection or a temporary order of protection"). But Plaintiff is not challenging subsection (f) of 38 RCNY 3-03 or 38 RCNY 5-10.[7]

If the parties' respective motions for summary judgment are pending while a decision in *Rahimi* is issued, the language of the decision may invite a FRAP 28(j)-type letter to the Court, but to stay this case to wait for a decision in a case challenging a regulation that is not even being challenged here is illogical.

*Bruen*'s discussion of licensing regimes is not material to the adjudication of Plaintiff's claims. **First**, *Bruen* was not a challenge to licensing requirements generally, nor is the case at bar. The Supreme Court simply allowed "shall issue" licensing schemes to continue, cautioning "outlier" states "like New York" that implement a "may issue" licensing scheme that its continued existence was contingent on implementing "objective" factors, like the shall-issue jurisdictions. *Bruen*, at 2138, n. 9. But New York has failed to make any such transition. **Second,** even shall-issue regimes are not beyond constitutional challenge. *Bruen*, at 2138, n. 9 ("because any permitting scheme can be put toward abusive ends, we do not rule out constitutional challenges to shall-issue regimes where, for example, lengthy wait times in processing license applications or exorbitant fees deny ordinary citizens their right to public carry").

---

[4] *Bruen*, at 2137–38 ("the scope of the protection applicable to the Federal Government and States is **pegged** to the public understanding of the right when the Bill of Rights was adopted in 1791") (emphasis added) citing, *Crawford v. Washington*, 541 U.S. 36, 42–50 (2004) (Sixth Amendment); *Virginia v. Moore*, 553 U.S. 164, 168–169 (2008) (Fourth Amendment); *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 122–125 (2011) (First Amendment).

[5] *Bruen*, at 2138, n. 9 (noting that shall-issue licensing regimes "appear to contain only narrow, objective, and definite standards" guiding licensing officials…rather than requiring the appraisal of facts, the exercise of judgment, and the formation of an opinion - features that typify proper-cause standards like New York's"). From the platform of a shall-issue licensing scheme with objective factors, individuals may challenge the constitutionality of each respective factor – similar to the 18 U.S.C. 922(g) challenges in *Rahimi* and other cases popping up in other circuits.

[6] *Bruen*, at 2162 ( "unlike New York's may-issue regime, those shall-issue regimes do not grant open-ended discretion to licensing officials").

[7] Unlike Mr. Rahimi, Plaintiff was **not** the subject of an active order of protection when he applied for the licenses -- or at any time thereafter.

The City's claim that Plaintiff suffers "no prejudice" from a stay highlights how tone-deaf New York remains when it comes to violations of the Second Amendment.

> The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.[8]

Mr. Garofalo is ***absolutely barred*** from exercising a guaranteed individual right[9] because of the City's enforcement of the challenged regulations.

If he lived in any county outside of New York City, he would be able to freely purchase and possess rifles and shotguns – because he has no disqualifiers under federal or state law. If he lived in a shall-issue state, he would also be able to freely possess handguns. Exercising constitutionally protected rights should not depend on one's zip code.

For the foregoing reasons, the City's request to stay this matter pending a decision in *United States of America v. Rahimi* should, most respectfully, be denied.

Very truly yours,

*Amy L. Bellantoni*
Amy L. Bellantoni

---

[8] *Bruen*, at 2156 quoting, *McDonald v City of Chicago*, 561 U.S. 742, 780(2010) (plurality opinion).
[9] *D.C. v. Heller*, 554 U.S. 570, 592 (2008) (finding that the plain text of the Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation").